# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

David Sanchez,

                    Plaintiff,

                                        Case No. 1:21-cv-4815-MLB

v.

LVNV Funding, LLC,

                    Defendant.

_____/

## **AMENDED ORDER**[1]

Plaintiff sued Defendant for violations of the Fair Debt Collection Practices Act.  Both parties moved for summary judgment.  (Dkts. 26; 27.)  Magistrate Judge J. Elizabeth McBath issued a Final Report and Recommendation (R&R), saying the Court should grant Plaintiff's motion and deny Defendant's.  (Dkt. 37.)  Defendant filed objections.  (Dkt. 39.)  The Court adopts the R&R.

---

[1] The Court amends its prior summary judgment order (Dkt. 41) to clarify that it grants summary judgment to Plaintiff only on the issue of liability. Because the issue of damages remains outstanding, the Court also directs the Clerk to reopen the case and orders the parties to inform the Court how they would like to proceed on the issue of damages.

## I.    Background

Plaintiff had a credit card account with Credit One Bank that became delinquent in 2016. (Dkt. 25-1 at 15.) Defendant, which owns a portfolio of unpaid financial accounts, acquired that debt. (Dkts. 25 ¶ 7; 27-1 ¶ 1.)[2] To service its accounts, Defendant engaged Resurgent Capital Services, LP. (Dkts. 25 ¶¶ 10, 12.) Resurgent identifies itself as a debt collector. (Dkt. 24-21 at 1.)

In October 2018, Plaintiff—through a credit repair company—sent Defendant a letter, saying he disputed the unpaid account and requesting verification of the debt. (Dkts. 24-5 at 2; 27-1 ¶ 7.) Resurgent responded to Plaintiff with an account summary and a letter notifying Plaintiff that it was a "communication . . . from a debt collector" and "an attempt to collect a debt[.]" (Dkt. 24-21 at 1.)

In 2019, Plaintiff sent letters to Experian, TransUnion, and Equifax to allege he saw "information" on his credit report that was not "true." (Dkts. 24-4 at 1; 24-6 at 1; 24-7 at 1; 24-8 at 1; 24-9 at 1.) He listed "LVNVFUNDG," his unpaid credit card account number, and a

---

[2] Plaintiff does not dispute Defendant's statement of undisputed material facts. (Dkt. 30 at 3-4.) The Court thus cites Defendants' pleading.

notation stating "[t]his account is not mine." (*Id.*)  Plaintiff testified he knew the credit card was his but was unsure how Defendant was connected to it.  (Dkt. 24-1 at 28:21–29:8.)  Defendant later sued Plaintiff on the debt and obtained a default judgment.  (Dkts. 24-10 at 1; 24-12 at 1.)  Plaintiff never satisfied the judgment.  (Dkt. 24 at 51:1–19.)

In August 2021, Plaintiff engaged a credit repair firm as counsel. (Dkt. 24 at 67:25–68:6.)  The firm quickly sent Defendant a letter, explaining Plaintiff no longer disputed the account and asking Defendant to remove a "dispute" notation it had placed on the account.  (Dkt. 24-17 at 1.)  In October 2021, Plaintiff obtained a copy of his credit report.  (Dkt. 24-18 at 1.)  It showed Defendant reported Plaintiff's account on October 5, 2021 with the "dispute" notation.  (Dkt. 24-18 at 6.)

Plaintiff sued Defendant in November 2021.  (Dkt. 1.)  He claims Defendant violated the Fair Debt Collection Practices Act (FDCPA) by falsely reporting he disputed the credit card account after he stopped doing so.  (Dkt. 1 ¶ 22.)  Plaintiff testified he wanted the "dispute" notation removed because he believed it prevented him from getting a mortgage.  (Dkt. 24 at 57:5–22.)  He never applied for a mortgage.  But from his own research—namely, watching YouTube videos—he believed

the notation would cause any lender to deny his application. (Dkts. 24-1 at 82:21–83:4; 27-1 ¶ 14–15.) He also testified he suffered emotional damage, depression, and anxiety due to Defendant's failure to remove the "dispute" notation and his perceived inability to get a mortgage loan. (Dkts. 24-1 at 100:2–24; 32-1.) Finally, Plaintiff testified he admits he owes the unpaid account but denies he owes the amount claimed by Defendants, saying he owes less than $500 rather than the $758 claimed. (Dkt. 27-1 ¶¶ 3, 11.) In other words, he does not really dispute the debt, just the amount claimed.

## II.   Standard

### A.   Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward

with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

## B.   R&R

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[3]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be

---

[3] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive."). The same is true for other unpublished opinions the Court relies upon in reaching its decision.

considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). And, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, whether or not objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III.  Discussion

Defendant argues Plaintiff's claim fails for two reasons: (1) he lacks standing to bring his claim, and (2) even if he did have standing, he fails to state a claim. (Dkts. 27; 29.) Plaintiff argues the undisputed evidence proves his claim as a matter of law. (Dkt. 26.) The Magistrate Judge agreed with Plaintiff, concluding he proved a redressable injury in fact and that Defendant violated the FDCPA. (Dkt. 37.) Defendant objects

to both findings.  (Dkt. 39.)

## A.    Standing

Defendant claims Plaintiff's only alleged injury is from his alleged inability to get a mortgage.  (Dkt. 27-2 at 7.)  Because Plaintiff never actually applied for a mortgage, Defendant says Plaintiff suffer no actual injury.  (Dkt. 27-2 at 8.)  As a result, Defendant argues Plaintiff lacks standing.  (Dkt. 27-2 at 6.)  The Magistrate Judge concluded that— regardless of whether he could get a mortgage—Plaintiff still suffered emotional distress due to the "dispute" notation and his perception he could not get a mortgage.  (Dkt. 37 at 11–12.)  She also determined Defendant's "misstatement" to the credit reporting agencies alone caused sufficient injury to confer standing.  (Dkt. 37 at 13.)  Defendant objects, saying any injury Plaintiff suffered was self-inflicted because his "emotional harm is directly tied to his self-created speculation that the presence of the dispute code might result in the denial of a theoretical mortgage application by a potential lender."  (Dkt. 39 at 16.)  It also says a bare violation of the FDCPA is not enough to create standing.  (Dkt. 39 at 13–14.)

"The party invoking the jurisdiction of a federal court bears the

burden of establishing [three] elements to the extent required at each stage of the litigation." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 996 (11th Cir. 2020). The plaintiff must show: (1) he or she suffered an injury in fact; (2) the defendant caused that injury; and (3) a favorable decision likely would redress that injury. *Id.* An injury must be "concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). To be concrete, an injury must be real rather than abstract. *Trichell*, 964 F.3d at 996. "[T]angible injuries qualify as concrete." *Id.* at 997.

As the Magistrate Judge correctly noted, emotional distress is a tangible injury. (Dkt. 37 at 11 (citing *Nguyen v. Atlanta Postal Credit Union*, 2022 WL 2389226, at *4 (N.D. Ga. Feb. 16, 2022).) Plaintiff, however, testified his perception he could not get a mortgage was the "main drive behind the emotional distress and the anxiety and the depression." (Dkt. 24-1 at 100:6–24.) But Plaintiff never (1) actually applied for a mortgage or (2) presented any evidence that the "dispute" notation would have caused a mortgage company to deny his application. That was just what he thought. Plaintiff, therefore, has failed to present

8

any evidence Defendant's conduct caused his alleged emotional distress.

In holding otherwise, the Magistrate Judge cited cases in which plaintiffs presented evidence they suffered emotional distress as a direct result of inaccurate information on their credit reports. (Dkt. 37 at 12.) But the plaintiffs in those cases tied their emotional distress directly to the defendants' actions. *Walters v. Fast AC, LLC*, for example, involved a defendant who reported an unpaid loan against a plaintiff, thus negatively impacting the plaintiff's credit score, preventing him from purchasing a truck and refinancing his home, and causing him to experience emotional distress as he fought with the defendant to correct his credit report. 60 F.4th 642, 646–47 (11th Cir. 2023). Similarly, in *Rivas v. Midland Funding, LLC*, the plaintiff suffered loss of sleep and extreme stress from "see[ing] the wrong amount due" on his account for several months. 842 F. App'x 483, 486 (11th Cir. 2021).

These cases confirm that emotional distress alone can establish standing *if* it is caused by the defendant's error. Indeed, it can likely be enough without any other impact if the mere fact of false information causes a person to worry or fret over the mere existence of that false information. But Plaintiff here has failed to present evidence of even that

low bar.  Plaintiff was asked at his deposition if the "dispute" notation cased him depression, anxiety, and emotional damage." (Dkt. 24-1 at 100:6-9.)  He said it did. (Dkt. 24-1 at 100:10.)  That alone might have been enough to establish standing.  But Plaintiff then explained the true source of his anxiety: he believed (based on YouTube videos) the notation would prevent him from getting a mortgage, so he never applied for a mortgage, and that caused him to fight with his wife who really wanted a house. (Dkt. 24-1 at 100:13–24.)  Plaintiff presented no evidence the "dispute" notation actually impacted his credit score let alone stopped him from getting a mortgage.  In the absence of any such evidence, Plaintiff's testimony demonstrates that his emotional distress resulted from his perceived inability to get a mortgage based on nothing but videos he watched online.  The Court finds this too tenuous to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (threatened future injury must be "certainly impending" to give standing) (citation omitted).

But that really does not matter.  Regardless of whether Plaintiff's emotional distress confers standing, Defendant's false report to the credit agencies alone gives Plaintiff standing.  "'[T]he reporting of inaccurate information about [Plaintiff's] credit' . . . has a 'close relationship to the

harm caused by the publication of defamatory information, which has long provided the basis for a lawsuit in English and American courts.'" *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) (quoting *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017)).  It is this common law analog that differentiates the type of violation for which Plaintiff seeks to recover from other bare statutory violations.  *Compare Trichell*, 964 F.3d at 998 (plaintiffs did not have standing under FDCPA where defendant sent them misleading debt collection letters because only common law analog was fraud and plaintiffs did not prove they relied on letters).  The Eleventh Circuit has explained that, where a statutory violation is like a traditional tort, the plaintiff's injury from the violation "satisfie[s] the concreteness requirement of Article III standing."  *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017); *see also Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (recently confirming test for whether statutory harm constitutes injury in fact is whether "'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts'") (citation omitted).[4]

--------

[4] For the same reason, Defendant's reliance on *Evans v. Transworld Sys.*

The Court thus adopts the Magistrate Judge's conclusion that Plaintiff has standing.

### B.    FDCPA

Defendant says regardless of whether Plaintiff has standing, his claim still fails because it is not a debt collector as required for liability under the statute.  (Dkt. 29 at 8.)  It also says it did not report false information when it listed the account as "disputed" because Plaintiff has admitted in this litigation that he still disagrees with how much he owes on the credit card account, and thus continues to dispute the debt.  (Dkt. 27-2 at 9.)  The Magistrate Judge concluded: (1) Defendant is a debt collector because Defendant and Resurgent operate as one entity to recover debts owned by Defendant; and (2) Defendant did not know at

---

is misplaced.  (Dkt. 39 at 13–14 (citing 2021 U.S. Dist. LEXIS 120877 (N.D. Ga. Apr. 23, 2021).)  In *Evans*, the court explained that recent jurisprudence instructs courts to "look much more closely at the injuries alleged to have been suffered" because a defendant's bare violation of a statute does not necessarily mean a plaintiff has suffered a concrete injury.  2021 U.S. Dist. LEXIS 120877, at *7–8 (citations omitted).  That is precisely what the Magistrate Judge did, and what this Court does now.  Defendant reported derogatory credit information to third parties. That sort of conduct—which happens to be a violation of the FDCPA— resulted in a concrete injury to Plaintiff.  This is not an instance of Congress's "creat[ing] an injury in fact where there is no concrete injury." *Id.* at *7 (citation omitted).

the time it reported the debt as "disputed" that Plaintiff did not really dispute the debt but rather took issue only with the amount owed. (Dkt. 37 at 18–23.) Defendant objects, raising basically the same arguments as before. (Dkt. 39.)

To establish an FDCPA claim, a plaintiff must show that (1) he or she was the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the statute; and (3) the defendant engaged in a prohibited act or failed to perform a requirement imposed by the statute. *Frazier v. Absolute Collection Servs.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2010) (collecting cases). The parties do not dispute that Plaintiff meets the first element, so the Court examines only the other two.

## 1.   Debt Collector

Under the FDCPA, a "debt collector" is any person who either (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Resurgent is a debt collector. The only question is whether

Defendant—which never corresponded with Plaintiff—is one as well. The Court concludes it is.

An owner of unpaid debt who hires someone else to collect the debt is not a debt collector—even if that person acquired the debt after default. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83–84 (2017) (holding entities that purchase debts originated by someone else and seek to collect those debts are not "debt collectors" subject to FDCPA). That person becomes a debt collector, however, if he or she acquires the delinquent debt in the course of doing business. *Id.* at 1316 n.8 (citing S. Rep. No. 95-382, at 2–3). So, where a person's or entity's "principal purpose" is debt collection, that person or entity meets the first definition of the statute and is not spared simply by using a middleman. *Id.*; *see also Rivas*, 842 F. App'x at 487 ("Satisfying either clause of [§ 1692(a)(6)'s] definition will render the person a 'debt collector,' subject to the substantive provisions of the FDCPA.").

Defendant "is the owner . . . of numerous unpaid accounts." (Dkt. 25 ¶ 7.) And it engages Resurgent for the sole purpose of managing and acting as the "master servicer" for those unpaid accounts. (Dkt. 25 ¶ 10.) Resurgent does this exclusively on behalf of and for the benefit of

Defendant.   Plus, as the Magistrate Judge noted, the undisputed evidence shows Defendant and Resurgent do not have a simple principal-agent relationship but instead act as one entity in the collection of unpaid debts owned by Defendant.  (Dkt. 37 at 16.)  Defendant's representative testified that she is also an "authorized representative" of Resurgent, she handles litigation-related tasks for both Defendant and Resurgent, serves as a records custodian for both entities, and has "testified on their behalf at trial on numerous occasions."  (Dkt. 25 ¶¶ 3–4.)[5]  Finally, Plaintiff's report from Credit Karma identifies Defendant as a "Collection Agency" and says Defendant reported to Equifax that Plaintiff "disputes this account information Collection account."  (Dkt. 24-18 at 1, 6.)

Plaintiff has presented undisputed evidence that Defendant is a debt collector under the statute.[6]

---

[5] Defendant says "the record is devoid of any evidence which demonstrates the existence" of a principal-agent relationship between it and Resurgent.  (Dkt. 39 at 12.)  Defendant is simply wrong.  Its representative's testimony alone is plenty of evidence that Resurgent acted—at the very least—as Defendant's agent in carrying out its principal purpose of debt collection.

[6] Though it plays no part in the Court's conclusion, given that the Court is constrained to the evidence presented in *this* case, the Court notes that the Eleventh Circuit has found in other cases that Defendant is a debt collector.  *See, e.g.*, *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920

### 2.   False Report

Section 1692(e)(2)(A) of the FDCPA "prohibits the use of 'false, deceptive, or misleading representation[s],' including by making false representations about 'the character, amount, or legal status of [a] debt." *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1036 (11th Cir. 2019) (quoting 15 U.S.C. § 1692(e)(2)(A)).   Section 1692(e)(8) prohibits "[c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."   15 U.S.C. § 1962(e)(8).   Continuing to report a debt as disputed that the debtor no longer disputes violates these provisions.   *Towles v. E. Account Sys. of Conn., Inc.*, 2023 WL 172023, at *4 (M.D. Ala. Jan. 12, 2023) (plaintiff proved FDCPA claim where defendant "falsely reported and continued to report to [CRA] that [plaintiff] disputed a consumer debt owed . . . even after [plaintiff] had

_____

F.3d 1264, 1266 (11th Cir. 2019) (finding Defendant is a debt collector "that purchases and attempts to collect on time-barred debts" and "retained [a third party] to collect the debt on [Defendant's] behalf"); *see also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1257 (11th Cir. 2014) ("Undisputedly, [Defendant] and its surrogates are debt collectors and thus subject to the FDCPA.").

informed [defendant] that he no longer disputed the debt").[7]

The facts are straightforward. Plaintiff told Defendant he no longer disputed his credit card account. A couple of months later, Defendant continued to report that Plaintiff disputed the account. Defendant thus knew—or should have known—it reported false information.

In arguing otherwise, Defendant points to Plaintiff's testimony during his deposition in 2022 that he continues to dispute the amount of the debt. (Dkt. 39 at 5–6.) It says because he has disputed the amount of the debt since at least 2018 (when he sent his initial dispute letter), it did not report false information by failing to remove the "dispute" notation. (*Id.*) But, as the Magistrate Judge noted, Defendant did not know Plaintiff disputed the amount of the debt *until* his deposition. (Dkt. 37 at 19.) The *only* information to which Defendant was privy when it

---

[7] Defendant tries to distinguish *Towles* by emphasizing that it was decided on default judgment. (Dkt. 39 at 8.) But on default judgment, the court merely accepts the plaintiff's allegations as admitted. *Towles*, 2023 WL 172023, at *3. Here, Plaintiff proved through evidence that he informed Defendant he no longer disputed the debt and Defendant continued to falsely report it as disputed. Regardless of their procedural posture, in both cases these facts are established. Defendant's argument that this case is different from *Towles* because other evidence shows Plaintiff continued disputing the debt despite his notification to Defendant fails for the reasons discussed below.

reported the account as disputed in October 2021 was: (1) Plaintiff's 2018 letter saying he disputed the debt, and (2) Plaintiff's August 2021 letter saying he no longer disputed the debt and wanted Defendant to "remove the dispute [notation] from the account."  (Dkt. 24-17 at 1.)  Defendant's after-the-fact justification—based on information it did not know at the time it continued to report the debt as disputed—does not save it.

Defendant argues the Magistrate Judge was wrong on this front because the FDCPA did not require that it receive a written notification from Plaintiff withdrawing his revocation of his dispute for his dispute over the amount of the debt to be effective.  (Dkt. 39 at 9–10.)  Defendant misses the point.  It points to no evidence at all—written or otherwise—that it knew Plaintiff disputed the amount of the debt when it reported the "dispute" notation in October 2021.  Even if the Magistrate Judge was wrong that Plaintiff's dispute was not effective because it was not "memorialized and communicated to [Defendant] in writing," (Dkt. 27 at 22)[8], the fact remains that Plaintiff never communicated his dispute to

_____

[8] The Court need not decide this issue given that it concludes Defendant falsely reported the dispute notification based on what it knew or should have known at the time.  But it appears Defendant misunderstands the Magistrate Judge's finding.  Defendant might be right that disputing the amount of a debt is equivalent to disputing the account under the

Defendant.   So, *based on Defendant's knowledge*, it falsely reported information about Plaintiff's debt.

At the end of the day, this is a simple case involving no genuine disputes of material fact.  Rather, its disposition boils down to two purely legal questions: (1) was Defendant a debt collector, and (2) did Defendant report information it knew or should have known was false?  The answer to both questions is yes, so Plaintiff is entitled to summary judgment.

## IV.   Conclusion

The Court **OVERRULES** Defendant's Objections to Magistrate Judge's Report and Recommendation of May 30, 2023 (Dkt. 39), **ADOPTS** the Magistrate Judge's R&R (Dkt. 37) as modified herein, **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. 26), and **DENIES** Defendant's Motion for Summary Judgment (Dkt. 27).  The Court notes that its ruling provides for summary judgment in favor of

---

FDCPA. (Dkt. 31-1 at 14.) This does not mean, however, that a plaintiff's *belief* the amount of a debt is wrong is a *dispute* that it can (or must) report under the FDCPA. Otherwise, as the Magistrate Judge explained, "a consumer could believe that a debt amount is incorrect but never officially dispute it with the debt collector," and "the debt collector would be required to report the debt to CRAs as disputed." (Dkt. 37 at 21.) If the debt collector did not do so, it would be "liable for failing to report information of which it was unaware." (Dkt. 37 at 21.) The statute simply does not work that way.

Plaintiff only on the issue of liability.  Accordingly, the Court **DIRECTS** the Clerk to reopen the case and **ORDERS** the parties within **fourteen (14) days** from the date of this Order to file a joint proposal advising the Court how they would like to proceed on the issue of damages. Specifically, the parties should address whether (1) they would like to proceed to a jury trial on the issue of damages; (2) they would like the Court to decide the issue of damages; and/or (3) they would like to stay the case for a period of time to engage in mediation on the issue of damages.

  **SO ORDERED** this 26th day of September, 2023.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE